[No. 22381-3-II.   Division Two.   April 10, 1998.]

*In the Matter of the Marriage of* MARK ERLING JACOBSON, *Appellant,* and JENNY HYJOO JACOBSON, *Respondent.*

*Paula C. Crane*, for appellant.

*Tarrell S. Decker* of *McCluskey, Sells, Ryan, Uptegraft & Decker*; and *Catherine Wright Smith* of *Edwards, Sieh, Smith & Goodfriend, P.S.*, for respondent.

Houghton, C.J. — Mark Erling Jacobson appeals from a permanent parenting plan contending that the trial court erred in finding that he and Jenny Hyjoo Jacobson (the mother) have a satisfactory history of cooperation and requiring the children to "frequently alternate" their residence. We affirm.

## FACTS

Mark Jacobson (the father) and Jenny Jacobson's (the

mother) 13-year marriage ended in 1996. Both parties are employed as nuclear engineers with the Puget Sound Naval Shipyard. They have two sons, one born in 1984 and the other in 1990. During the marriage and against the father's wishes, the mother worked full-time. The father believed that either he or the mother, rather than another, should provide care for the children. To accomplish this goal, the father worked the evening shift while the mother worked days. Both children attended preschool on a part-time basis and were cared for by a babysitter when there was a gap between the father's and the mother's schedule.

After the couple separated, the trial court imposed a temporary parenting plan based upon the guardian ad litem's recommendation. The plan designated the father as temporary care provider. The mother spent two of every three weekends and one evening per week with the children.

During the trial, the father testified that after the couple had separated, they could not cooperate with each other. He also testified that because of the temporary residential plan, he and the children resided in the family home and the mother moved into an apartment five minutes away. During this period, the father worked the day shift. The mother agreed to care for the children at the family home before the father left for work, from approximately 5:30 to 8:00 A.M. There was testimony that this arrangement did not work well because the mother would arrive late and she would make her lunches using the food purchased by the father.

On a couple of occasions, the mother deducted certain amounts from the child support check sent to the father for snacks purchased for the boy's baseball team and for baseball shoes she purchased for one of the children. Another instance of disagreement between the couple involved the mother's refusal to let the father or his parents provide day care for the children when the boys stayed with her during summer vacation. The father stated that the children did not attend church on Sundays spent with the

mother. He also testified that after spending the weekend at the mother's home, the children would come back without the extra items of clothing sent with them at the beginning of their visit.

The guardian ad litem (GAL) testified that either parent is capable of acting as the primary residential parent because both are actively involved and have warm, loving relationships with their sons. She testified that even though the father and the mother have differing parenting styles, the children have benefited from this diversity and respond well to each parent.

But the GAL concluded that a 50/50 split in the residential time would do a disservice to the children. She believed that midweek shifting of residences was difficult for school-aged children and detrimental to their school work. She recommended the father as the primary care provider since he had spent considerable time with the children and did not have other significant interests outside of work and his children's lives. She recommended that the mother spend two out of every three weekends and one evening per week with the children.

The father and the mother each requested primary residential care of the children, proposing plans that provided weekend time and extended summer time to the other parent. In its oral ruling, the trial court found that the couple had not cooperated well after the separation but had a history of cooperation before the separation.[1] The trial court designated the father as the primary care provider. The children were to spend Thursday, Friday and Saturday

---

[1]The trial judge explained her reason for deviating from the GAL's recommendation by stating:

Both parents have a history, both pre- and postseparation, of providing physical care, meals, transportation. Both parents have also shared in the athletic, emotional, intellectual and creative lives of their children. Each parent has gifts and strengths to offer their children in the future and have done so in the past. These children are described as outstanding children who have clearly benefited from the participation of both parents.

Counsel has referred to sharing time as the easy decision. I don't think it is. The reasons for my decision don't have to do with what's easiest for me, frankly, or easiest for the parents, they have to do with trying to preserve for

nights with the mother to "allow[] both parents school time with their children, so that one of them can participate in the school activities." The father appeals.

## ANALYSIS

*History of Cooperation and Shared Performance of Parenting*

The father contends that the trial court erred in concluding that it could consider the parents' preseparation conduct under the statutory language of RCW 26.09.187(b)(ii)(B), requiring a "satisfactory history of cooperation and shared performance of parenting functions." In essence, he asserts that the trial court cannot disregard the parties' hostilities toward each other after the separation and force the parents to cooperate through a very structured parenting plan.

■■ Under RCW 26.09.184, a parenting plan must include residential placement and the parents are encouraged to work together to develop such a plan. *In re Marriage of Littlefield*, 133 Wn.2d 39, 51, 940 P.2d 1362 (1997). But in the absence of agreement, the trial court is given that responsibility. RCW 26.09.187; *Littlefield*, 133 Wn.2d at 52. The trial court is given broad discretion in fashioning the plan based upon the child's best interests and identified factors. RCW 26.09.187; *Littlefield*, 133 Wn.2d at 52. Discretion is abused if the decision is manifestly unreasonable or based upon untenable grounds. *Littlefield*, 133 Wn.2d at 46-47. In determining the welfare of children, the trial court's findings are verities on appeal if there is substantial evidence to support them. *Rickard v. Rickard*, 7 Wn. App. 907, 910-11, 503 P.2d 763 (1972), *review denied*, 81 Wn.2d 1012 (1973).

According to RCW 26.09.187(3), in imposing residential provisions:

these children a quality of life that most children don't enjoy, and it's a quality of life that they've had because of the participation of both parents.

I have tried to structure it in such a way that in fact it requires fewer transfers than Carol Rainey's [GAL] proposed plan, and so to the extent that it increases time with both parents I've tried to eliminate areas where there was discretion on the part of either parent if they're not able to cooperate.

(a) The court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child . . . .

. . . .

(b) The court may order that a child frequently alternate his or her residence between the households of the parents for brief and substantially equal intervals of time only if the court finds the following:

(i) No limitation exists under RCW 26.09.191;

(ii)(A) The parties have agreed to such provisions . . . , or

(B) The parties have a satisfactory history of cooperation and shared performance of parenting functions; the parties are available to each other, especially in geographic proximity, to the extent necessary to ensure their ability to share performance of the parenting functions; and

(iii) The provisions are in the best interests of the child.

RCW 26.09.187(3).

The parties concede that there was no agreement between them and no recommendation by the GAL for the provisions present in the residential schedule of the permanent parenting plan. The parties also concede that a residential schedule dividing the children's week by spending four nights with the father and three nights with the mother constitutes "frequent" alternation.

In interpreting statutory language, the statute must be construed in the manner that best fulfills the legislative purpose and intent. *In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993). In enacting RCW 26.09.187, the Legislature determined that it is not in the best interest of children " 'to achieve equal time by moving the children *frequently* back and forth between the parents' households for *brief* periods of time.' " *Littlefield*, 133 Wn.2d at 53-54 (quoting Senator Philip Talmadge, SENATE JOURNAL, 50TH LEG. 1561 (1987)). The parents' interests are subsidiary to the consideration of the children's best interests. *Rickard*, 7 Wn. App. at 910. In the absence of

parental cooperation in a postseparation action, the trial court is given broad discretion to develop and order a parenting plan according to the guidelines set forth in RCW 26.09.187(3) and based upon the best interests of the children at the time of trial. *Littlefield*, 133 Wn.2d at 51-52.

Although RCW 26.09.187(3)(b)(ii)(B) does not define which periods the "history of cooperation" extends to, an earlier section pertaining to residential provisions states that the court shall consider "[e]ach parent's *past* and *potential for future* performance of parenting functions." RCW 26.09.187(3)(a)(iii). Because it is common for parties seeking divorce or separation to be uncooperative, an expectation of perfect harmony before a trial court could give effect to subsection (ii)(B) would make this subsection superfluous. Statutes should not be construed so as to render any portion meaningless or superfluous. *In re Marriage of C.M.C.*, 87 Wn. App. 84, 88, 940 P.2d 669 (1997).

The father asserts that after the dissolution, fundamental changes occurred in the couple's ability to cooperate. He states that, in light of the parents' hostility toward each other, frequent alternation in the residential plan creates instability and inconsistencies in the children's lives. He then concludes that it was error to rely upon the couple's level of cooperation during the marriage.

But, as is evident from the trial court's oral ruling, the trial court considered the statutory factors of RCW 26.09.187 in developing a residential schedule that was in the best interest of the children. The trial court considered the children's unique upbringing where the children were supervised by only one parent at a time. They were very comfortable with each parent even though the parenting styles differed.

The trial court observed that both parents were actively involved in the children's lives and the children came first for both parents. Hence, the children were very well-adjusted and successful. The trial court determined that despite the parent's lack of cooperation with each other

during the postseparation period, they had the capacity to cooperate as they had done so previously.[2]

Here the final parenting plan and residential schedule serve the children's best interests. The trial court did not err in considering all of the relevant factors in fashioning the parenting plan.

*Attorney Fees*

■ The mother requests an award of attorney fees and costs as allowed by RCW 26.09.140, which states in pertinent part: "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." The mother submitted a financial declaration to the court. We consider the arguable merit of the issues on appeal and the parties' financial resources. *In re Marriage of King*, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). Both parties' earnings and expenses are almost identical and therefore we decline to award the mother attorney fees.

Affirmed.

BRIDGEWATER and HUNT, JJ., concur.

Reconsideration denied May 8, 1998.

Review denied at 136 Wn.2d 1023 (1998).

---

[2]We also note that the father does not appeal the joint decision-making provisions of the plan.